IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ASANTE S. GUILFORD,   :
          :
  Plaintiff,     :
          :
v.          :  Civil Action File No.
          :
MARKETSTAR CORPORATION, :  1:08-CV-0336-CC-SSC
CISCO SYSTEMS, INC., CISCO :
SYSTEMS SALES & SERVICES :
d/b/a CISCO SYSTEMS, INC, :
CISCO SYSTEMS CAPITAL  :
CORPORATION d/b/a CISCO :
SYSTEMS, INC., and OMNICOM :
GROUP INC. d/b/a OMNICOM :
MANAGEMENT, INC.,   :
          :
  Defendants.    :

## NON-FINAL REPORT AND RECOMMENDATION

This case is before the court on the Motion to Dismiss for Failure to State

a Claim Pursuant to Fed. R. Civ. P. 12(b)(6) filed by all Defendants [Doc. 20];

Motion for Summary Judgment filed by Defendant Omnicom Group Inc. [Doc. 58];

and Motion for Summary Judgment filed by Defendants Cisco Systems, Inc., Cisco

Systems Sales & Services and Cisco Systems Capital Corporation [Doc. 60].

## I. Procedural History

### A. Plaintiff's Complaint

Plaintiff, who is proceeding *pro se*, filed a complaint on December 28, 2007

[Doc. 2], asserting a number of claims against several corporate defendants,

including MarketStar Corporation; Cisco Systems, Inc.; Cisco Systems Sales &

Services d/b/a Cisco Systems, Inc.; Cisco Systems Capital Corporation d/b/a Cisco Systems, Inc.; and Omnicom Group Inc. d/b/a Omnicom Management, Inc. In her complaint, Plaintiff asserts that the corporate entities were her employer (see Compl., ¶¶ 4, 10, 13), and she alleges that she was discriminated against because of her race, African-American, and retaliated against for complaining about discrimination, and that the discriminatory and retaliatory acts included termination from her employment (see Compl., ¶¶ 18-20).  She asserts the following claims:

- •    Count I (One):  "Violation of Title VII"

- •    Count II (Two):  "Section 1981"

- •    Count III (Three): "Hostile Work Environment"

- •    Count IV (Four): "Discharge from Employment in Retaliation for Exercise of Rights Protected"

- •    Count V (Five): "Discrimination Based on Race"

- •    Count VI (Six): "Discrimination Based on Sex"

- •    Count VII (Seven): "Negligent Hiring and Retention"

- •    Count VIII (Eight): "Negligent Training and Supervision"

- •    Count IX (Nine): "Intentional Infliction of Emotional Distress"

- •    Count X (Ten): "Negligent Infliction of Emotional Distress"

- •    Count XI (Eleven): "Defamation of Character"

- Count XII (Twelve): "Liable" [sic][1]

- Count XIII (Thirteen): "Slander"

- Count XIV (Fourteen): "Wrongful Termination"

- Count XV (Fifteen): "Violation of ERISA"

- Count XVI (Sixteen): "Punitive Damages"

- Count XVII (Seventeen): "Compensatory Damages"

- Count XVIII (Eighteen): "Personal Injury"

By Order dated January 29, 2008 [Doc. 3], the court found that Plaintiff had set forth sufficient facts to demonstrate that her claims should not be deemed frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(I) with respect to the corporate Defendants.[2] In that Order, the court specifically stated that it made "no findings as to whether the corporate entities that Plaintiff names were, in fact, her employers; whether Plaintiff's complaint, or any claim set forth therein, could withstand a motion to dismiss for failure to state a claim or on another ground; or whether Plaintiff's claims have merit." (Doc. 3, p. 2 n.1).

## B.   **Defendants' Motion to Dismiss**

On April 28, 2008, Defendant MarketStar Corporation filed its answer. [Doc. 19]. On that same date, Defendants MarketStar Corporation, Omnicom Group Inc., Cisco Systems, Inc., Cisco Sales & Services, and Cisco Systems Capital

---

[1] The undersigned reads this claim to be "Libel," as discussed in the body of this Report, *infra.*

[2] Plaintiff's claims against a number of individuals named as defendants were not allowed to proceed.

3

Corporation filed a motion to dismiss Plaintiff's complaint "pursuant to Fed. R. Civ. P. 12(b)(6) and other applicable law." [Doc. 20]. In their motion, all Defendants seek dismissal of Counts Three, Five, Six, Seven, Eight, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, Seventeen and Eighteen on a number of grounds, including failure to state a claim and statute of limitations. (Doc. 20, Defs. Br., pp. 4-5). Defendants Omnicom Group Inc., Cisco Systems, Inc., Cisco Sales & Services and Cisco Systems Capital Corporation also seek dismissal of any employment-based count on the ground that they were not Plaintiff's employer for purposes of those claims. (See Doc. 20, Defs. Br., pp. 3-4). MarketStar concedes it was Plaintiff's employer. (Doc. 20, Defs. Br., p. 2).

Plaintiff filed a response to Defendants' motion to dismiss [Doc. 24], and Defendants filed a reply to Plaintiff's response [Doc. 31]. Plaintiff then filed objections to Defendants' motion to dismiss [Doc. 34], and Defendants filed a motion to strike that response [Doc. 36].[3]

## C.     Conversion of Motion to Dismiss to Motion for Summary Judgment

By Order signed August 21, 2008 [Doc. 49], the undersigned converted Defendants' motion to dismiss to a motion for summary judgment, directed Defendants to supplement their motion no later than September 22, 2008 and directed Plaintiff to file any response no later than October 15, 2008.[4] The court

---

[3] That motion has been denied. (See Doc. 49, p. 9).

[4] The undersigned also stayed this action until Defendants' motion to dismiss, now converted to a motion for summary judgment, is resolved. (Doc. 49, p. 7).

found "that the issue whether each of the five corporate entities named in Plaintiff's complaint was her employer for purposes of Plaintiff's employment-related claims should be resolved before requiring all of these entities to participate in discovery or additional litigation," but that resolution requires consideration of materials beyond the complaint. (Doc. 49, pp. 5-6). Therefore, the court converted the motion to dismiss to a motion for summary judgment in order to consider those materials. (Id. at p. 6).

By Order signed September 16, 2008 [Doc. 57], the court extended the deadlines for the parties to supplement their filings. The court directed Defendants to file their supplemental briefs and materials no later than December 12, 2008 and directed Plaintiff to file any supplemental response no later than January 5, 2009.[5]

Defendant Omnicom Group Inc. ("Omnicom") filed a motion for summary judgment, with brief in support, a statement of undisputed material facts and exhibits [Doc. 58] on December 11, 2008. Defendants Cisco Systems, Inc., Cisco Systems Sales & Services and Cisco Systems Capital Corporation (referred to collectively as "Cisco defendants" unless it is necessary to refer to a defendant individually) filed a motion for summary judgment, with brief in support, a statement of undisputed material facts and exhibits [Doc. 60] on December 12,

_____

[5] The court extended the deadlines in order to accommodate Plaintiff's concerns, which were outlined in her motion to stay proceedings. (Doc. 51 (filed under seal)).

2008.[6]

On January 5, 2009, the date Plaintiff's supplemental response was due to be filed, Plaintiff filed a motion for extension of time [Doc. 64], seeking a 90-day extension of time to file her response. The court denied that request by Order signed January 8, 2009 [Doc. 65], but extended the deadline for Plaintiff's response until January 16, 2009.

On January 16, 2009, Plaintiff filed a motion for oral argument [Doc. 66], a motion to recuse the undersigned [Doc. 67] and a motion for hearing [Doc. 68]. Those motions are addressed in a separate Order. Plaintiff did not file a substantive supplemental response to Defendants' summary judgment filings. Therefore, the undersigned will consider the filings Plaintiff made in response to Defendants' motion to dismiss (see Docs. 24 & 34) as her opposition to Defendants' motions for summary judgment.

Although Local Rule 7.1B, NDGa. provides that "[f]ailure to file a response shall indicate that there is no opposition to the motion," Fed. R. Civ. P. 56(e)(2) provides in relevant part, "If the opposing party does not so respond, summary judgment should, *if appropriate*, be entered against that party." (Emphasis added). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

_____

[6] The Cisco defendants also filed a motion to file an exhibit under seal [Doc. 61]. The undersigned has addressed that motion in a separate Order.

law." Fed. R. Civ. P. 56(c).  Given the requirements of Rule 56, "the district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion."  United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., 363 F.3d 1099, 1101 (11th Cir. 2004) (citing Dunlap v. Transamerica Occidental Life Ins. Co., 858 F.2d 629, 632 (11th Cir. 1988) (per curiam)).  The court explained in One Piece of Real Property:

> The district court need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials.  At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment.

Id. at 1101-02 (internal citations omitted).  Therefore, the undersigned has considered the materials submitted by the parties to determine whether Defendants' motions are "supported by evidentiary materials" and whether summary judgment is appropriate.

## II.  Background Facts

### A.  Standards for Determining Facts for Summary Judgment

The "facts," for summary judgment purposes only, are derived from the submissions of the parties, including Omnicom's statement of undisputed material facts [Doc. 58-3]("Omnicom SMF"); the Cisco defendants' statement of undisputed material facts [Doc. 60-3] ("Cisco defs. SMF"); and the uncontroverted record evidence, including materials submitted by Defendants in support of their motion to dismiss [Doc. 20], materials submitted by Plaintiff in support of her

responses to Defendants' motion to dismiss [Docs. 24 & 34], and materials submitted by Defendants in support of their motions for summary judgment.

Although the court has reviewed the parties' submissions to determine whether genuine issues of material fact exist to be tried, the court is not obligated to "scour the record" to determine whether such issues exist. Tomasini v. Mt. Sinai Med. Ctr. of Fla., Inc., 315 F. Supp. 2d 1252, 1260 n.11 (S.D. Fla. 2004). The facts are construed in the light most favorable to Plaintiff as the non-movant. See Frederick v. Sprint/United Mgmt. Co., 246 F.3d 1305, 1309 (11th Cir. 2001).

## B.   Facts Relevant to Defendants' Motions[7]

### 1.   MarketStar Corporation

MarketStar Corporation ("MarketStar") provides sales and marketing services. (Omnicom SMF, ¶ 1). MarketStar is headquartered in Ogden, Utah, and has offices throughout the United States. (Omnicom SMF, ¶ 2). Many of MarketStar's clients "outsource" their sales and marketing functions to MarketStar. (Omnicom SMF, ¶ 3). Many MarketStar employees are Inside Sales Account Managers ("ISAM") for MarketStar clients. (Omnicom SMF, ¶ 3). ISAMs are provided lists of potential contacts with whom they communicate, by E-mail and/or telephone, to generate interest in, and sales of, the products and services offered by MarketStar clients. (Omnicom SMF, ¶ 4). Some MarketStar employees are Outside Sales Account Managers for MarketStar clients. (Omnicom SMF,

---

[7] Certain other facts relevant to the undersigned's consideration of the motions are discussed in the body of this Report.

¶ 5). Outside Sales Account Managers meet with potential customers, and conduct product demonstrations in stores to promote MarketStar clients' products. (Omnicom SMF, ¶ 5).

## 2. **MarketStar's Relationship with Omnicom**

MarketStar is a wholly-owned subsidiary of Omnicom, one of the world's largest advertising agency holding companies. (Omnicom SMF, ¶ 6). Omnicom is headquartered in New York. (Omnicom SMF, ¶ 7). MarketStar is part of a group of over 150 companies in Diversified Agency Services ("DAS"), a division of Omnicom. (Omnicom SMF, ¶ 8). Omnicom and MarketStar do not share offices or staff, and they have separate boards of directors, separate corporate officers and no common directors or officers. (Omnicom SMF, ¶¶ 9, 10). MarketStar has no authority to bind Omnicom to any agreement or to act on Omnicom's behalf. (Omnicom SMF, ¶ 11). Omnicom provides guidance and advice for overall corporate governance to its agencies. (Omnicom SMF, ¶ 12). For example, MarketStar consults with DAS' Legal Department. (Omnicom SMF, ¶ 12). MarketStar, not Omnicom, makes all personnel decisions, i.e., whom to employ, compensation and benefits. (Omnicom SMF, ¶ 13).

MarketStar employees are eligible to participate in Omnicom's benefit plans. (Omnicom SMF, ¶ 14). For example, eligible MarketStar employees may participate in Omnicom's group health care plan, and MarketStar employees may also be eligible to participate in Omnicom Dental, Employee Stock Purchase Plan, 401K, Vision, Long Term Disability and Life Insurance. (Omnicom SMF, ¶ 14).

### 3.    **The Cisco Defendants**

Cisco Systems, Inc. ("Cisco"), headquartered in San Jose, California, designs, manufactures and sells Internet protocol-based networking and other products related to the communications and information technology industry and provides services associated with these products and their use.  (Cisco defs. SMF, ¶ 1).  Cisco Systems Capital Corporation ("Cisco Capital"), a wholly-owned subsidiary of Cisco, specializes in financing of Cisco's products and networking solutions.  (Cisco defs. SMF, ¶ 2).  There is no Cisco wholly-owned subsidiary or other Cisco-related entity operating in the United States under the name "Cisco Systems Sales and Services." (Cisco defs. SMF, ¶ 3).

### 4.    **MarketStar's Relationship with Cisco**

Cisco sought an outside vendor to provide product sales and service support to Cisco's accounts and became a MarketStar client.  (Omnicom SMF, ¶ 16; Cisco defs. SMF, ¶¶ 4, 9).  MarketStar has no relationship with any entities named "Cisco Systems Capital Corporation" or "Cisco Systems Sales and Services." (Omnicom SMF, ¶ 17; Cisco defs. SMF, ¶ 13).  MarketStar neither owns nor operates Cisco; nor does Cisco own or operate MarketStar.  (Omnicom SMF, ¶ 18; Cisco defs. SMF, ¶¶ 7, 8).

In March 2005, Cisco and MarketStar entered into a Master Services Agreement, pursuant to which MarketStar provided Cisco with inside sales account management services throughout the United States.  (Omnicom SMF,

¶ 19; Cisco defs. SMF, ¶¶ 5, 14).[8] MarketStar was solely responsible for hiring all of the ISAMs and associated personnel which it provided to Cisco under the Master Service Agreement. (Cisco defs. SMF, ¶ 21). Neither Cisco nor Cisco Capital screened job applications or resumes, interviewed candidates or participated in hiring decisions associated with any of the MarketStar employees who were furnished to Cisco to work as ISAMs. (Cisco defs. SMF, ¶ 22).

MarketStar and Cisco do not share telephones, computer servers or offices. (Omnicom SMF, ¶¶ 23, 24; Cisco defs. SMF, ¶¶ 11,12). MarketStar has its own personnel department that is not controlled or directed by Omnicom or Cisco. (Omnicom SMF, ¶ 20). MarketStar—not Omnicom or Cisco—is responsible for the day-to-day management of MarketStar employees supplied to Cisco, including ISAMs, and MarketStar makes its own decisions concerning such employment matters as hiring, setting assignments and schedules, determining salary, bonus or incentive structures, payroll, performance evaluation, discipline, discharge, transfers, promotions and demotions. (Omnicom SMF, ¶ 20; Cisco defs. SMF, ¶¶ 17, 26-28, 31-32). Conversely, MarketStar has no control over Omnicom or Cisco employees. (Omnicom SMF, ¶ 22; Cisco defs. SMF, ¶ 10).

### 5. **Plaintiff's Employment**

In or around August 2005, MarketStar posted an advertisement for ISAM positions in Alpharetta, Georgia. (Omnicom SMF, ¶ 25; Cisco defs. SMF, ¶ 33).

---

[8] Cisco Capital was not a party to the Master Service Agreement between Cisco and MarketStar. (Cisco defs. SMF, ¶ 6).

According to the posting, the available ISAM positions with MarketStar involved "representing a major manufacturer of computer network components." (Omnicom SMF, ¶ 26). In addition, the posting indicated ISAMs would be "responsible for working closely with an Outside Sales Manager managing the sales process with VARS [Value-Added Resellers] and Clients from beginning to close." (Omnicom SMF, ¶ 26). The posting did not identify by name the MarketStar client the ISAMs would be serving. (Omnicom SMF, ¶ 26).

Plaintiff applied to MarketStar for one of the ISAM positions described in the job posting. (Omnicom SMF, ¶ 27; Cisco defs. SMF, ¶ 34). Plaintiff was interviewed by Alicia Grooms, a MarketStar employee in MarketStar's Recruiting Department. (Omnicom SMF, ¶ 28). She also was interviewed by Derrick Austin, a MarketStar Human Resource manager in Georgia for the Cisco account, and Karl Pearl, the Inside Sales Director for MarketStar's East/South Region. (Omnicom SMF, ¶ 28). Plaintiff was not interviewed by any Omnicom or Cisco employees. (Omnicom SMF, ¶ 29; Cisco defs. SMF, ¶ 36).

On August 30, 2005, MarketStar offered Plaintiff an ISAM position with MarketStar's Cisco Account. (Omnicom SMF, ¶ 30). Several MarketStar managers, including Jodie Nicotera of MarketStar's Human Resources department, made the decision to offer Plaintiff an ISAM position. (Omnicom SMF, ¶ 31). Neither Cisco nor Omnicom was involved in MarketStar's decision to offer a job to Plaintiff. (Omnicom SMF, ¶ 32; Cisco defs. SMF, ¶ 38).

As set forth in the Offer Letter, written on MarketStar letterhead: Plaintiff

would be eligible for a bonus if she met certain goals established by MarketStar; information concerning MarketStar benefit plans for which Plaintiff may be eligible would be provided at a later date; and Plaintiff would be an at-will employee of MarketStar. (Omnicom SMF, ¶ 33; <u>see also</u> Ex. C to King Decl., Doc. 58-4). Plaintiff signed the Offer Letter on August 30, 2005. (Omnicom SMF, ¶ 34; <u>see also</u> Ex. C to King Decl.). Plaintiff also signed MarketStar's Confidentiality and Non-Compete Agreement, which refers to the "employment relationship between Employee and MarketStar." (Omnicom SMF, ¶¶ 35, 36; <u>see also</u> Ex. D to King Decl.). Plaintiff also acknowledged that she was subject to MarketStar's policies and work rules. (Omnicom SMF, ¶ 44; <u>see also</u> Ex. E to King Decl.).

Plaintiff was assigned to the Cisco account as an ISAM. (Cisco defs. SMF, ¶ 45). Plaintiff signed Cisco's Confidential Information Agreement for Vendors, Contractors, Independent Contractors, Consultants and Partners. (Omnicom SMF, ¶ 38; <u>see also</u> Ex. F to King Decl.). In paragraph 2, Plaintiff specifically acknowledged that she was not a Cisco employee. (Omnicom SMF, ¶ 39; <u>see also</u> Ex. F to King Decl.).

In September 2005, Plaintiff began working for MarketStar. (Omnicom SMF, ¶ 40). Plaintiff's annual base salary was approximately $42,000.00, with the potential to earn quarterly incentive compensation determined through a formula set by MarketStar. (Omnicom SMF, ¶ 41). Plaintiff's hours, salary and other compensation were determined by MarketStar, and Plaintiff was paid through MarketStar's payroll. (Omnicom SMF, ¶¶ 42, 43; Cisco defs. SMF, ¶¶ 41-42).

MarketStar first assigned Plaintiff to the Central Region, also known as the Wisconsin Territory. (Omnicom SMF, ¶ 45; Cisco defs. SMF, ¶ 49). Plaintiff worked from a MarketStar facility located in Alpharetta, Georgia. (Omnicom SMF, ¶ 46; Cisco defs. SMF, ¶ 46). No Cisco employees worked at the MarketStar facility where Plaintiff worked. (Omnicom SMF, ¶ 47; see also Cisco defs. SMF, ¶¶ 24, 47). MarketStar, not Cisco or Omnicom, operated the Alpharetta facility. (Omnicom SMF, ¶ 48; Cisco defs. SMF, ¶ 48).

As a MarketStar ISAM assigned to Cisco, Plaintiff's responsibilities included working closely with Cisco sales representatives, known as Territory Account Managers ("TAM"), by "cold calling," E-mailing and following up by telephone and E-mail with potential customers of Cisco. (Omnicom SMF, ¶ 50; Cisco defs. SMF, ¶¶ 15, 19). Plaintiff used a list of contacts from MarketStar to generate sales leads for Cisco through telephone and Internet outreach. (Omnicom SMF, ¶ 50). TAMs were not responsible for supervising MarketStar's ISAMs, and MarketStar's ISAMs reported directly to a MarketStar supervisor. (Cisco defs. SMF, ¶¶ 29, 30).

MarketStar assigned Plaintiff two E-mail addresses to use in the course of her employment: "AGuilford@marketstar.com" and "aguilfor@cisco.com." (Omnicom SMF, ¶ 52). The "cisco.com" E-mail was displayed to Plaintiff on the MarketStar server list as a "Forwarder" address. (Omnicom SMF, ¶ 52). Plaintiff was assigned two E-mail addresses so that when she communicated by E-mail with customers interested in Cisco products and services, these potential customers would not be confused about who was contacting them. (Omnicom

SMF, ¶ 53). This practice is not unique to work done by MarketStar for Cisco; MarketStar uses this dual E-mail system to assist sales for all of its clients. (Omnicom SMF, ¶ 54). When a MarketStar employee pursues sales leads for the MarketStar client to whom he or she is assigned, or conducts any business on behalf of the client to whom he or she is assigned, the employee uses the Forwarder E-mail address. (Omnicom SMF, ¶ 55). For internal matters, MarketStar employees use their MarketStar E-mail addresses. (Omnicom SMF, ¶ 56). MarketStar sends company communications to its employees' MarketStar E-mail addresses, not to their Forwarder addresses. (Omnicom SMF, ¶ 56).

When Plaintiff was assigned to the Central Region, she reported directly to Clyde "Butch" Dempsey, a MarketStar employee. (Omnicom SMF, ¶ 58; Cisco defs. SMF, ¶ 50). In January 2006, MarketStar reassigned Plaintiff to Cisco's Southeast Region, or the Houston Territory. (Omnicom SMF, ¶ 59; Cisco defs. SMF, ¶ 52). Plaintiff continued working in MarketStar's Alpharetta, Georgia facility, but she began reporting to Reggie Lee, a MarketStar employee, when she was assigned to the Houston Territory. (Omnicom SMF, ¶ 60; Cisco defs. SMF, ¶¶ 53, 54). Reggie Lee reported to Karl Pearl, the Inside Sales Director for MarketStar's East/South Region. (Omnicom SMF, ¶ 61).

While assigned to the Houston Territory, Plaintiff supported Dennis Odneal, a TAM employed by Cisco. (Cisco defs. SMF, ¶ 56; Omnicom SMF, ¶ 62). Odneal had no authority to, and did not, supervise Plaintiff. (Cisco defs. SMF, ¶ 57). Odneal was not an employee of MarketStar, and MarketStar had no control over

15

any of the terms and conditions of Odneal's employment, including, but not limited to, his work assignments. (Omnicom SMF, ¶ 63).

Shortly after MarketStar assigned Plaintiff to the Houston Territory, Plaintiff complained to Lee and Pearl that Odneal was disrespectful and rude, and Odneal complained to his Cisco supervisor, Regional Sales Manager Dean McCarley, that Plaintiff was unhelpful and abrasive. (Omnicom SMF, ¶ 64; Cisco defs. SMF, ¶ 58).[9] In or around May 2006, a Cisco Partner informed McCarley that because of Plaintiff's attitude and communications, it refused to have any further business dealings with her. (Cisco defs. SMF, ¶ 59). McCarley contacted Lee to discuss his concerns about Plaintiff's performance, McCarley wrote Lee an E-mail to "follow up . . . [their] conversation on Tuesday May 16th [2006] regarding the performance and attitude of Asante Guilford," and McCarley requested that Plaintiff be reassigned to another region. (McCarley Decl., Doc. 60-5, ¶¶ 22, 23; Ex. A to McCarley Decl.; see also Omnicom SMF, ¶ 65; Cisco defs. SMF, ¶ 60).

On or about June 8, 2006, Jodie Nicotera, with MarketStar's HR department, explained to Plaintiff that MarketStar was removing her from the Houston Territory. (Omnicom SMF, ¶ 67; see also id. ¶ 31). According to a June 12, 2006 E-mail to Plaintiff from Jeff Baumgarten, a MarketStar Manager, MarketStar placed Plaintiff on a temporary Special Assignment as an ISAM while MarketStar "work[ed] diligently with Cisco to identify an ISAM territory assignment

---

[9] The truth of these assertions is not material to the instant motions.

where [Plaintiff], MarketStar, and Cisco Inside Sales, all agree [Plaintiff] would have an excellent chance of success in working . . . ." (Ex. I to King Decl.; <u>see also</u> King Decl., ¶ 59). The E-mail also asked Plaintiff, "Please respond with your indication that you will accept the terms above if at all possible by tomorrow morning 6/13/06 at 9am EDT." (Ex. I to King Decl.).

MarketStar asserts that Plaintiff refused the offer (<u>see</u> King Decl., ¶ 60), and on June 14, 2006, Nicotera sent Plaintiff a letter stating, in relevant part, "Because you have refused the position offered, we will consider that you have voluntarily resigned your position with MarketStar effective June 14, 2006." (Ex. J to King Decl.).[10] Neither Odneal or McCarley requested that MarketStar terminate Plaintiff's employment. (Cisco defs. SMF, ¶ 69).

Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on June 13, 2006, Charge No. 410-2006-02059, in which she asserted claims for race and sex discrimination and retaliation against MarketStar Corporation. (<u>See</u> Ex. B to Doc. 20). Plaintiff filed a Charge of Discrimination with the EEOC on August 1, 2006, Charge No. 410-2006-02639, in which she asserted claims for race and sex discrimination and retaliation against Omnicom Group Inc. (<u>See</u> Ex. C to Doc. 24). Plaintiff also filed a Charge of Discrimination with the EEOC on August 1, 2006, Charge No. 410-2006-02063, in which she asserted claims for race and sex discrimination

---

[10] Plaintiff denies that she was offered a position. (Doc. 24, ¶ 21). The issue of whether Plaintiff was offered a position is not relevant to the issues in Defendants' motions, and the undersigned makes no finding that Plaintiff was or was not offered a position.

and retaliation against Defendant Cisco Systems, Inc. (See Ex. C to Doc. 20).

On September 28, 2007, the EEOC sent Plaintiff a Dismissal and Notice of Rights letter on Charge No. 410-2006-02059 (the MarketStar charge). (See Ex. D to Doc. 20). The EEOC also sent Plaintiff a Dismissal and Notice of Rights letter indicating that it was closing its file on Charge No. 410-2006-02639 (the Omnicom charge) because the EEOC had no jurisdiction as there was "no employer-employee relationship." (See Ex. A to Stillman Decl., Doc. 58-5). The EEOC also sent Plaintiff a Dismissal and Notice of Rights letter indicating that it was closing its file on Charge No. 410-2006-02063 (the Cisco charge) because there was "No Employee/Employer Relationship." (See Ex. E to Doc. 20).

### III. **Relevant Standards**

#### A. **Motions to Dismiss**

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted only if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007). When considering such a motion, a court must accept the allegations in the plaintiff's complaint as true and construe them in the light most favorable to the plaintiff. See M.T.V. v. DeKalb County Sch. Dist., 446 F.3d 1153, 1156 (11th Cir. 2006). Fed. R. Civ. P. 8(a)(2) requires that the complaint contain " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)),

overruled in part by Twombly, 550 U.S. 544. To survive a motion to dismiss, a complaint "does not need detailed factual allegations," but it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Twombly, 127 S. Ct. at 1964-65 (citations omitted). Furthermore, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." Id. at 1965 (citations omitted).

Because Plaintiff is a *pro se* litigant, her complaint, " 'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Nevertheless, "while notice pleading may not require that the pleader allege a 'specific fact' to cover every element or allege 'with precision' each element of a claim, it is still necessary that a complaint 'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.' " Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001) (quoting In re Plywood Antitrust Litig., 655 F.2d 627, 641 (5th Cir. Unit A Sept. 1981)), cert. denied, 534 U.S. 1129 (2002).

**B.    Motions for Summary Judgment**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(c). The moving party has an initial burden of informing the court of the basis for the motion and showing that there is no genuine issue of material fact by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp v. Catrett</u>, 477 U.S. 317, 323 (1986). If the non-moving party will bear the burden of proving the material issue at trial, then in order to defeat summary judgment, she must respond by going beyond the pleadings, and by her own affidavits, or by the discovery on file, identify facts sufficient to establish the existence of a genuine issue for trial. <u>See</u> <u>id.</u> at 322, 324. A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Id.</u> at 249-50 (internal citations omitted). It is not the court's function at the summary judgment stage to determine credibility or decide the truth of the matter. <u>Id.</u> at 249. Rather, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." <u>Id.</u> at 255.

The Eleventh Circuit has explained summary judgment as follows:

The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which

> that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Young v. General Foods Corp., 840 F.2d 825, 828 (11th Cir. 1988) (quoting

Celotex, 477 U.S. at 322-23), cert. denied, 488 U.S. 1004 (1989). Furthermore,

"[a] nonmoving party, opposing a motion for summary judgment supported by

affidavits[,] cannot meet the burden of coming forth with relevant competent

evidence by simply relying on legal conclusions or evidence which would be

inadmissible at trial." Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir.

1991)(citation omitted), cert. denied, 506 U.S. 952 (1992). The evidence "cannot

consist of conclusory allegations or legal conclusions." Id. (citation omitted).

Unsupported self-serving statements by the party opposing summary judgment

are insufficient to avoid summary judgment. See Midwestern Waffles, Inc. v.

Waffle House, Inc., 734 F.2d 705, 714 (11th Cir. 1984).

### IV.  Discussion

### A.    Claims Asserted Against All Defendants Subject to Dismissal

In their motion to dismiss [Doc. 20], Defendants assert that a number of

Plaintiff's claims should be dismissed on various grounds, such as failure to state

a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6) or

statute of limitations.  The undersigned agrees that a number of Plaintiff's claims

should be dismissed for the reasons discussed *infra*.

### 1.  Race Discrimination Claim (Count Five)

In Count Five of her complaint, Plaintiff asserts a claim of "Discrimination Based on Race," but fails to state the legal or factual bases for this claim.  To the extent that the claim is asserted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") or 42 U.S.C. § 1981 ("§ 1981"), it appears duplicative of her Count One and Count Two race discrimination claims.  To the extent that she asserts a claim for race discrimination under Georgia law, it must be dismissed as Georgia does not recognize a claim for discrimination by a private employer based on race.  See Alford v. Cosmyl, 209 F. Supp. 2d 1361, 1372 (M.D. Ga. 2002) (rejecting the plaintiff's negligent supervision and retention claims, the court wrote: "If the State of Georgia desires or intends to provide its citizens with a state law remedy for employment discrimination, it has the means to do so through legislation enacted by the Georgia General Assembly.  Absent a statutory or clear common law duty, this Court has no authority to abandon judicial restraint and create a new state law cause of action for employment discrimination.").  But see O.C.G.A. §§ 45-19-22 and 45-19-29 (prohibiting race discrimination by state employers). Accordingly, it is **RECOMMENDED** that Defendants' motion to dismiss [Doc. 20] be **GRANTED** on Plaintiff's Count Five race discrimination claim.

### 2.  Sex Discrimination Claim (Count Six)

Plaintiff asserts a claim in Count Six of her complaint for "Discrimination

Based on Sex," but she fails to state the legal or factual bases for this claim. Moreover, Plaintiff asserts no facts in her complaint that would support such a claim. Plaintiff asserts in her complaint:

> In January of 2006, Plaintiff's ability to perform her job duties in the territory she was assigned was called into question because of her race (African-American). Plaintiff reported this to her direct manager, Human Resources and Plaintiff was transferred from that territory, to another territory, at which time the treatment worsened, instead of improving, as a direct result of information shared between management, and Co-workers in the respective territories. After Plaintiff voiced objections to this discriminatory conduct, she was denied the opportunities to work, unlike other employees.

(Compl., ¶ 18). Plaintiff further alleges that "In June of 2006, Plaintiff was terminated from her employment by Defendants" (id. ¶ 19), and "Plaintiff's race and her actions in reporting racially discriminatory conduct were motivating factors in Defendants' decision to change the terms of her employment and to terminate her employment" (id. ¶ 20). Nowhere in her complaint does Plaintiff allege facts that show that she was subjected to discriminatory treatment based on her **gender** or that she complained of such treatment. Rather, she limits her factual allegations to her complaints of racial discrimination.

Although the court gives her complaint a more liberal construction because of her *pro se* status, even as a *pro se* litigant, Plaintiff must include "a short and plain statement of the claim showing that [she] is entitled to relief," Fed. R. Civ. P. 8(a)(2), and that statement must consist of "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."

Twombly, 127 S. Ct. at 1964-65; see also Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1263 (11th Cir. 2004) ("To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims.").

Because Plaintiff has not stated any facts that show she is entitled to relief for sex discrimination, she has failed to state a claim for discrimination based on her sex. Accordingly, it is **RECOMMENDED** that Defendants' motion to dismiss [Doc. 20] be **GRANTED** on Plaintiff's Count Six sex discrimination claim.

### 3. <u>Intentional Infliction of Emotional Distress (Count Nine)</u>

Defendants argue that Plaintiff's intentional infliction of emotional distress claim (Count Nine) should be dismissed because her "allegations are insufficient to state a claim of intentional infliction of emotional distress." (Doc. 20, Defs. Br., pp. 20-21).

In order to state a claim for intentional infliction of emotional distress under Georgia law, Plaintiff must show: 1) the conduct was intentional or reckless; 2) the conduct was extreme and outrageous; 3) there is a causal connection between the wrongful conduct and the emotional distress; and 4) the emotional distress is severe. See Hendrix v. Phillips, 428 S.E.2d 91, 92 (Ga. Ct. App. 1993); see also Lawal v. RTM, 260 F. App'x 149, 153 (11th Cir. 2006) (unpublished decision) (citing Northside Hosp., Inc. v. Ruotanen, 541 S.E.2d 66, 68-69 (Ga. Ct. App. 2000)). Whether a person's actions rose to the requisite level of outrageousness

is a question of law to be determined by the court. <u>Yarbray v. Southern Bell Tel. & Tel. Co.</u>, 409 S.E.2d 835, 838 (Ga. 1991). Georgia courts have found liability for intentional infliction of emotional distress "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Yarbrough v. SAS Sys., Inc.</u>, 419 S.E.2d 507, 509 (Ga. Ct. App.), <u>cert. denied</u>, No. S92C1151, 1992 Ga. LEXIS 674 (July 16, 1992). "The burden on a plaintiff asserting a claim for intentional infliction of emotional distress is heavy." <u>Durley v. APAC, Inc.</u>, 236 F.3d 651, 658 (11th Cir. 2000).

Plaintiff simply labels Count Nine of her complaint "Intentional Infliction of Emotional Distress," with no further explanation or recitation of facts in support of her claim. From a review of her complaint, it appears the following allegations arguably support her claim: her ability to perform her duties was called into question because of her race; after she complained to her manager and Human Resources, she was transferred; after the transfer, "the treatment worsened"; after Plaintiff complained, she "was denied the opportunities to work" and was then terminated. (Compl., ¶¶ 18-19). The undersigned finds that Plaintiff has not stated a claim for intentional infliction of emotional distress because she failed to allege conduct that was extreme and outrageous for purposes of such a claim.

This court has explained the scope of intentional infliction of emotional distress claims made in an employment setting:

In the employment context, Georgia Courts do not generally consider adverse employment actions to be "extreme or outrageous" conduct. That is because an intentional infliction of emotional distress claim is not an available cause of action for someone whose job simply causes her distress. Rather, liability attaches only where the conduct causing the distress is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

Robinson v. United Parcel Serv., Inc., No. 1:06-CV-2601-RLV, 2007 U.S. Dist. LEXIS 84497, at *21 (N.D. Ga. Nov. 14, 2007) (quoting Jarrard v. United Parcel Serv., Inc., 529 S.E.2d 144, 147 (2000)). As noted in Jarrard, actions supporting a claim for intentional infliction of emotional distress do "not include mere insults, indignities, threats, annoyances, petty oppressions, or other vicissitudes of daily living." Jarrard, 529 S.E.2d at 147 (footnotes omitted). Rather, "[p]laintiffs are expected to be hardened to a certain amount of rough language and to occasional acts that are definitely inconsiderate and unkind." (Id.).

Derogatory comments by supervisors or co-workers, critical performance evaluations and negative employment actions generally do not constitute extreme and outrageous conduct. See, e.g., Lawal, 260 F. App'x at 153 ("Lawal's claim [that] Wilson and RTM humiliated and embarrassed him by fraudulently transferring him to a different area and by making a slanderous statement do[es] not rise to the level that Georgia courts have set in order to prove intentional infliction of emotional distress, and the district court did not err in dismissing this claim."); Allen v. Commercial Pest Control, Inc., 78 F. Supp. 2d 1371, 1380 (M.D.

Ga. 1999) (alleged harsh comments about pregnant employee and alleged forced maternity leave did "not rise to the requisite level of outrageousness and egregiousness so as to state a viable claim of intentional infliction of emotional distress"); <u>Jarrard</u>, 529 S.E.2d at 146 (no intentional infliction of emotional distress claim where supervisor insisted on giving "stinging" performance evaluation to employee on day employee returned from a six week leave for psychiatric care even though employee cried and begged supervisor to stop the evaluation and where supervisor "smirked" at the employee and threatened him with termination, causing the employee to have a mental breakdown); <u>Bowers v. Estep</u>, 420 S.E.2d 336, 337-39 (Ga. App.) (no intentional infliction of emotional distress claim where supervisor knew of the plaintiff's emotional conditions but "intentionally harassed, threatened, intimidated and belittled him and maliciously changed conditions of his job, causing him to take a leave of absence . . . and be admitted to a psychiatric clinic"), <u>cert. denied</u>, No. S92C1267, 1992 Ga. LEXIS 727 (Ga. Sept. 11, 1992); <u>see also</u> <u>Clark v. Coats & Clark, Inc.</u>, 990 F.2d 1217, 1229 (11th Cir. 1993); <u>Lively v. McDaniel</u>, 522 S.E.2d 711, 713-14 (Ga. Ct. App. 1999); <u>Biven Software, Inc. v. Newman</u>, 473 S.E.2d 527, 529 (Ga. Ct. App. 1996), <u>cert. denied</u>, No.  S96C1868, 1996 Ga. LEXIS 1092 (Ga. Oct. 31, 1996). Accordingly, it is **RECOMMENDED** that Defendants' motion to dismiss [Doc. 20] be **GRANTED** on Plaintiff's intentional infliction of emotional distress claim (Count Nine).

### 4. <u>Negligent Infliction of Emotional Distress (Count Ten)</u>

Plaintiff asserts a claim for negligent infliction of emotional distress in Count Ten, which Defendants argue must be dismissed for failure to state a claim. (Doc. 20, Defs. Br., pp. 21-22).

" 'In a claim concerning negligent conduct, a recovery for emotional distress is allowed only where there is some impact on the plaintiff, and that impact must be a physical injury.' " Lee v. State Farm Mut. Ins. Co., 533 S.E.2d 82, 84 (Ga. 2000) (quoting Ryckeley v. Callaway, 412 S.E.2d 826 (Ga. 1992)). There are three elements to the current Georgia impact rule: "(1) a physical impact to the plaintiff; (2) the physical impact causes physical injury to the plaintiff; and (3) the physical injury to the plaintiff causes the plaintiff's mental suffering or emotional distress." Id. at 85. Furthermore, "the failure to meet any one of these requirements has proved fatal to recovery. . . ." Id.; see also Kirkland v. Earth Fare, Inc., 658 S.E.2d 433, 436 (Ga. Ct. App. 2008) ("In order to prevail on [a negligent infliction of emotional distress] claim, [the plaintiff] must meet the requirements of the Georgia impact rule . . . ."), cert. denied, No. S08C1136, 2008 Ga. LEXIS 651 (Ga. July 7, 2008).

Plaintiff has failed to allege that she suffered any physical impact that caused her physical injury. Therefore, she has failed to state a claim for negligent infliction of emotional distress, and it is accordingly **RECOMMENDED** that Defendants' motion to dismiss [Doc. 20] be **GRANTED** on Plaintiff's Count Ten negligent infliction of emotional distress claim.

## 5. Defamation, Libel and Slander Claims (Counts Eleven, Twelve and Thirteen)

Defendants argue that Plaintiff's defamation, libel and slander claims (Counts Eleven, Twelve and Thirteen) should be dismissed because they are barred by the applicable one-year statute of limitation. (Doc. 20, Defs. Br., pp. 22-23). O.C.G.A. § 9-3-33 provides in relevant part that "[a]ctions for injuries to the person shall be brought within two years after the right of action accrues, **except for injuries to the reputation**, which shall be brought within **one year** after the right of action accrues . . . ." (Emphasis added); see also McCleskey v. Vericon Res., Inc., 589 S.E.2d 854, 856 (Ga. Ct. App. 2003) (applicable statute of limitation is one year for libel, slander and defamation claims), cert. denied, No. S04C0521, 2004 Ga. LEXIS 221 (Ga. Mar. 1, 2004).

Plaintiff does not set forth in her complaint the communications she alleges were defamatory, libelous or slanderous; who made them; or when they were made. Therefore, her claims are subject to dismissal for failure to state a claim.

Furthermore, Plaintiff indicates in her complaint that her "ability to perform her job duties" was called into question in January 2006; that after she was transferred, information (presumably about her) was "shared between management," with the result that "treatment [of her] worsened"; and that she was terminated in June 2006. (Compl., ¶¶ 18,19). Plaintiff has not alleged in her

complaint that any defamatory, libelous or slanderous communication occurred after she was terminated in June 2006. Because she did not file the instant complaint until December 2007, her claims for defamation, libel and slander (Counts Eleven, Twelve and Thirteen) are barred by Georgia's one-year statute of limitation for such claims.[11]    Accordingly, it is **RECOMMENDED** that Defendants' motion to dismiss [Doc. 20] be **GRANTED** on Plaintiff's defamation (Count Eleven), libel (Count Twelve) and slander (Count Thirteen) claims.

### 6.    Wrongful Termination (Count Fourteen)

In Count Fourteen, Plaintiff asserts a claim for "wrongful termination." Although she does not state the legal authority for such a claim, the undersigned presumes the claim is asserted under state law, as Plaintiff's claims under Title VII and § 1981 are contained in other counts.

---

[11] Plaintiff argues that these claims "are not time-barred, as they fall under Section 1981 and the acts continued post employment." (Doc. 24, ¶ 17). Plaintiff has not asserted in her complaint that the alleged defamatory, libelous or slanderous communications "continued post employment," however. Furthermore, § 1981 does not govern Plaintiff's state law defamation, libel or slander claims. To the extent Plaintiff alleges that she was subjected to discrimination based on her race pursuant to § 1981, her § 1981 claims do not appear to be time-barred. Her state law defamation, libel and slander claims are, however, barred by Georgia's one-year statute of limitations for such claims.

Plaintiff also argues that her claims are not time-barred because she did not discover the communications at issue until the EEOC investigation "less than one year ago." (Doc. 34, p. 9). She contends that her claims "are not time-barred, but rather time beg[a]n for the statute on the date in which the documents were made public." (Id.). Plaintiff is incorrect. Plaintiff's causes of action accrued from the date on which the alleged defamatory, libelous or slanderous statement or statements were published. See Clark v. Clark, 969 F. Supp. 1319, 1327 (S.D. Ga. 1997) ("An action for defamation occurs, if at all, when the defamatory statement is published."); Glanville v. Glanville, No. 1:92-CV-267-GET, 1993 WL 256605, at *3 (N.D. Ga. Mar 5, 1993) ("O.C.G.A. § 9-3-33 sets the statute of limitations for actions for injuries to reputation at one year. That is, suit must be brought within one year after the right of action accrues **regardless of when the alleged defamation is discovered**." (citation omitted) (emphasis added)).

Defendants argue that Plaintiff cannot state a wrongful termination claim under Georgia law. (Doc. 20, Defs. Br., pp. 17-18). "In Georgia, wrongful termination 'is a tortious act growing out of the breach of the employment contract.' " Fink v. Dodd, 649 S.E.2d 359, 362 (Ga. Ct. App. 2007) (quoting Mr. B's Oil Co. v. Register, 351 S.E.2d 533, 534 (Ga. Ct. App. 1986)). " '[T]he general rule is that an employee, employed at will and not by contract, cannot bring an action against his employer for wrongful discharge from employment or wrongful interference with the employment contract when and where he is an at will employee with no definite and certain contract of employment.' " Id. (quoting Jellico v. Effingham County, 471 S.E.2d 36, 37 (Ga. Ct. App. 1996)).

Plaintiff alleges no facts that show she was employed pursuant to an employment contract between her and her employer. Accordingly, it is **RECOMMENDED** that Defendants' motion to dismiss [Doc. 20] be **GRANTED** on Plaintiff's wrongful termination claim (Count Fourteen). See Fink, 649 S.E.2d at 362 (finding wrongful termination claim should have been dismissed and explaining "[n]owhere in the complaint does Dodd allege facts showing an enforceable contract of employment or assert facts from which such a contract reasonably may be inferred.").[12]

---

[12] Furthermore, Defendants have produced evidence in support of their motions for summary judgment indicating that Plaintiff was an at-will employee. (See Exs. C and D to King Decl.). Therefore, even if dismissal for failure to state a claim under Rule 12(b)(6) were not appropriate, summary judgment would be warranted on Plaintiff's wrongful termination claim because Plaintiff has failed to controvert evidence that she was an at-will employee and not employed pursuant to an employment contract.

### 7.    **ERISA (Count Fifteen)**

In Count Fifteen of her complaint, Plaintiff presumably asserts a claim under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"). However, Plaintiff simply asserts "Violation of ERISA," with no explanation or statement of the factual or legal bases for such a claim, including the ERISA provision that was allegedly violated or how it was violated. Defendants argue that Plaintiff's purported ERISA claim should be dismissed because:

> Plaintiff has failed to plead any facts that establish that: (1) she is entitled to ERISA's protection; (2) any of the Defendants denied benefits allegedly owed to her pursuant to ERISA; or (3) MarketStar terminated her employment for reasons related to Plaintiff's purported exercise of any ERISA rights. Indeed, Plaintiff, once again, fails to allege *any facts whatsoever* in support of her "Violation of ERISA" claim.

(Doc. 20, Defs. Br., p. 19) (emphasis in original).

The undersigned agrees. Other than her assertion that there was a "Violation of ERISA," Plaintiff has asserted no facts in her complaint that show she is entitled to relief. Simply labeling a count "ERISA" is insufficient to state a claim to withstand dismissal for failure to state a claim. See Twombly, 127 S. Ct. at 1964-65. Accordingly, it is **RECOMMENDED** that Defendants' motion to dismiss [Doc. 20] be **GRANTED** on Plaintiff's ERISA claim (Count Fifteen).

**8.    Plaintiff's Claims for Punitive Damages (Count Sixteen) and Compensatory Damages (Count Seventeen)**

Defendants argue that Plaintiff's claims for punitive and compensatory damages (Counts Sixteen and Seventeen) should be dismissed "because these claims are remedies and not proper causes of action." (Doc. 20, Defs. Br., pp. 23-24).   The undersigned agrees that these "claims" are more properly part of Plaintiff's prayer for relief, in which she requests compensatory and punitive damages, and they are not separate causes of action.   Because Counts Sixteen and Seventeen are duplicative of her prayer for relief and therefore superfluous, it is **RECOMMENDED** that Defendants' motion to dismiss [Doc. 20] be **GRANTED** on those counts.[13]   See Fed. R. Civ. P. 12(f) ("The court may strike from a pleading . . . any redundant . . . matter.").

**9.    Personal Injury (Count Eighteen)**

In Count Eighteen of her complaint, Plaintiff simply asserts "Personal Injury," with no explanation of the legal or factual bases for this claim. Defendants argue that this claim should be dismissed because Plaintiff "has failed to allege that she suffered a physical injury." (Doc. 20, Defs. Br., p. 24).   The undersigned agrees.   Under Georgia law, a claim for personal injury lies only where there is an allegation of physical injury.   See Ford v. Whipple, 483 S.E.2d

---

[13] The dismissal of these counts does not affect Plaintiff's demand for compensatory and punitive damages.

33

591, 592 (Ga. Ct. App.) (court dismissed personal injury claim "because there is *expressly* no physical injury" (emphasis in original) (citations omitted)), <u>cert. denied</u>, S97C1025, 1997 Ga. LEXIS 840 (Ga. Sept. 18, 1997).

In this case, Plaintiff has alleged that she was discriminated against and retaliated against, but she has not asserted that Defendants physically injured her, apart from whatever physical manifestations she may have experienced as the result of her alleged emotional distress. Accordingly, it is **RECOMMENDED** that Defendants' motion to dismiss [Doc. 20] be **GRANTED** on Plaintiff's personal injury claim (Count Eighteen).[14]

## B. <u>Plaintiff's Remaining Claims Against MarketStar</u>

MarketStar does not seek dismissal of Counts One, Two and Four of Plaintiff's complaint. (Doc. 20, Defs. Br., p. 1). MarketStar does seek dismissal of the following claims, which have not yet been addressed in this Report: Plaintiff's hostile work environment claim (Count Three), negligent hiring and retention claim (Count Seven), and negligent training and supervision claim (Count Eight).

---

[14] It is also possible that Plaintiff included this claim as part of her request for damages, like her "claims" for punitive and compensatory damages in Counts Sixteen and Seventeen, and it is therefore duplicative of her prayer for relief. The nature of Plaintiff's damages and her entitlement to the relief requested in her prayer for relief remain matters to be determined, regardless of the dismissal of Counts Sixteen, Seventeen and Eighteen.

### 1. <u>**Hostile Work Environment Claim (Count Three)**</u>

MarketStar argues that Plaintiff's hostile work environment claim should be dismissed "because Plaintiff has failed to allege sufficient facts to support such a claim under Title VII." (Doc. 20, Defs. Br., pp. 12-13). In Count Three of her complaint, Plaintiff simply asserts a claim for "Hostile Work Environment," without asserting the statutory, legal or factual bases for such a claim. Reading her complaint as a whole, Plaintiff arguably alleges a racially and retaliatory hostile work environment, presumably pursuant to Title VII and § 1981. As already discussed, Plaintiff has not presented any facts that would support a claim that she was discriminated against because of her sex, and therefore, the court does not read her hostile work environment claim to encompass a claim for a sexually hostile work environment.

While the undersigned agrees that Plaintiff's complaint is sparse with respect to this claim, the undersigned is mindful of Plaintiff's *pro se* status and finds that her complaint arguably contains "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 127 S. Ct. at 1974. In light of the fact that Plaintiff's other Title VII and § 1981 claims are proceeding against MarketStar, the undersigned **RECOMMENDS** that MarketStar's motion to dismiss [Doc. 20] Plaintiff's Title VII and § 1981 hostile work environment claims (Count Three) be **DENIED**.

## 2.    Negligent Hiring and Retention (Count Seven) and Negligent Training and Supervision (Count Eight)

Plaintiff labels Count Seven of her complaint "Negligent Hiring and Retention," and she labels Count Eight "Negligent Training and Supervision," but she does not provide any factual or legal bases for such claims.

Citing Farrell v. Time Serv., Inc., 178 F. Supp. 2d 1295, 1300 (N.D. Ga. 2001), MarketStar argues that Plaintiff's negligent hiring and retention (Count Seven) and negligent training and supervision (Count Eight) claims must be dismissed "because Plaintiff fails to allege that she suffered an injury at the hands of a fellow employee or, if such an injury did occur, that MarketStar, her employer, knew that one of its employees was likely to cause injury to her." (Doc. 20, Defs. Br., pp. 19-20).

As the court explained in Farrell, "A claim for negligent hiring, retention or supervision brought pursuant to Georgia law arises when an employer negligently hires, retains or supervises an employee and that employee subsequently harms the plaintiff." 178 F. Supp. 2d at 1300. The Farrell court also wrote, quoting Harper v. City of East Point, 515 S.E.2d 623, 625 (1999), that "[t]o establish such a claim, the plaintiff must allege, and ultimately prove, that the employer 'knew or should have known of the employee's propensity to engage in the conduct

which caused the plaintiff's injury.' " Id.[15]  The <u>Farrell</u> court dismissed the plaintiff's negligent hiring, retention and supervision claim with the following explanation:

> Plaintiff has alleged no facts whatsoever to establish the elements of the claim.  She refers the court to no employee individually or group of employees collectively who committed the alleged tort.  She does not provide any facts surrounding her basis for the claim.  And she does not allege that the employer knew or should have known of any employee's propensity to engage in the conduct which is unspecified and which allegedly caused Plaintiff's injury.

<u>Id.</u>  The court also found that a negligent hiring, retention or supervision claim did not lie because "even if Plaintiff did allege that her termination was caused by Defendant's negligent hiring, retention or supervision of another employee, the claim is barred by Plaintiff's at-will employment status."  <u>Id.</u>

In this case, Plaintiff has alleged that she reported to her manager and to Human Resources that her "ability to perform her job duties . . . was called into question because of her race," and that thereafter she was transferred, her "treatment worsened" and she was then denied opportunities after voicing her objections and terminated.  (Compl., ¶¶ 18, 19).  Unlike the Plaintiff in <u>Farrell</u>,

---

[15] <u>Harper</u> has been overruled since the <u>Farrell</u> decision, with respect to its language supporting "the proposition that to prevail on a negligent hiring/retention claim, a plaintiff must show the defendant employer knew or should have known of an employee's propensity to commit the tortious or criminal act that caused the plaintiff's injury." <u>Munroe v. Universal Health Servs., Inc.</u>, 596 S.E.2d 604, 606 (Ga. 2004).  The court in <u>Munroe</u> held that "a defendant employer has a duty to exercise ordinary care not to hire or retain an employee the employer knew or should have known posed a risk of harm to others where it is reasonably foreseeable from the employee's 'tendencies' or propensities that the employee could cause the type of harm sustained by the plaintiff." <u>Id.</u>

Plaintiff does not simply allege that her employer negligently hired, retained or supervised an employee who terminated Plaintiff.

The undersigned recognizes that Plaintiff's complaint lacks specifics about the complained-of treatment and does not identify the specific person or persons who allegedly discriminated against her or retaliated against her. However, the undersigned finds that dismissal of her claims would be premature at this point, particularly in light of her *pro se* status and the court's obligation to hold her complaint "to less stringent standards than formal pleadings drafted by lawyers." Erickson, 127 S. Ct. at 2200.[16]

Plaintiff's complaint puts Defendant on notice that she is alleging she complained of discrimination and/or retaliation and then continued to be subjected to discrimination and/or retaliation. To the extent that Plaintiff's complaint is not sufficiently detailed with respect to other aspects of these claims, Defendant will have the opportunity to obtain additional facts through discovery.

Accordingly, it is **RECOMMENDED** that MarketStar's motion to dismiss [Doc. 20] be **DENIED** on Plaintiff's negligent hiring and retention (Count Seven) and negligent training and supervision (Count Eight) claims.

---

[16] The undersigned notes that the plaintiff in Farrell was represented by counsel.

## C. Plaintiff's Employment-Related Claims Against Omnicom and Cisco Defendants

In their motions for summary judgment, Omnicom and the Cisco defendants argue that the remaining claims against them should be dismissed because they were not Plaintiff's employer for purposes of those claims.  (See Doc. 58, Omnicom Br., pp. 6-7; Doc. 60, Cisco Br., p. 3).  Those claims are: Title VII race discrimination claim (Count One); § 1981 race discrimination claim (Count Two); Title VII and § 1981 hostile work environment claims (Count Three);[17] Title VII and § 1981 retaliation claim (Count Four);[18] negligent hiring and retention (Count Seven); and negligent training and supervision (Count Eight).

### 1. Title VII Claims

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a).  Under Title VII, an "employer" is defined as, among other things, "one or more individuals, . . .

---

[17] Although Plaintiff did not specify that she asserts her hostile work environment claim pursuant to Title VII and § 1981, the undersigned liberally construes Plaintiff's complaint to assert her claim pursuant to those provisions.

[18] Although Plaintiff did not specify that she asserts her retaliatory discharge claim pursuant to Title VII and § 1981, the undersigned liberally construes Plaintiff's complaint to assert her claim pursuant to those provisions.

partnerships, . . . corporations, [or] legal representatives . . . ." 42 U.S.C. §
2000e(a) & (b).

### a. **Omnicom**

Omnicom argues that it was not Plaintiff's employer under any of the
applicable tests for resolving that issue, i.e., the "single employer" or "integrated
enterprise test", the "joint employer" test, and the "agency test." (Doc. 58,
Omnicom Br., pp. 10-20). See also Walden v. Verizon Bus. Network Servs., Inc.,
No. 1:06-cv-2394-WSD-WEJ, 2008 WL 269619, at *12 (N.D. Ga. Jan. 29, 2008)
("[T]he Eleventh Circuit has recognized three doctrines that allow an employee, in
certain circumstances, to assert a Title VII claim against an entity that is not
formally her employer.  These related doctrines are referred to as the agency,
single employer, and joint employer theories of liability." (citations omitted)).

### i. **Integrated Enterprise Test**

The integrated enterprise test is used to determine whether " 'two ostensibly
separate entities are highly integrated with respect to ownership and operations,'
and therefore may be counted as one entity under a Title VII claim." Kolczynski
v. United Space Alliance, LLC, No. 6:04-cv-716-Orl-18KRS, 2005 U.S. Dist. LEXIS
20508, at *10-11 (M.D. Fla. Sept. 20, 2005) (quoting Lyes v. City of Riviera Beach,
166 F.3d 1332, 1341 (11th Cir. 1999) (internal quotation omitted)).  "The test used
to determine whether two companies should be treated as a single employer in
this manner was . . . first used by the Supreme Court in a labor relations context."

Id. at 11 (citing Radio & Television Broad. Technicians Local Union 1264 v. Broad. Serv. of Mobile, Inc., 380 U.S. 255, 256 (1965)).  Under this test, a court considers the following four factors: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control."  Lyes, 166 F.3d at 1341.  Evaluating the evidence under this test, the undersigned finds that Omnicom and MarketStar were not a single employer or integrated enterprise.

With respect to the first two elements, except for Omnicom's practice of allowing its subsidiaries' employees the opportunity to participate in its benefits program, there is no evidence of functional inter-relatedness between the operations of Omnicom and MarketStar, and there is no evidence of "centralized control of labor relations" between the two companies.  They do not share offices or staff, and MarketStar, not Omnicom, hires its own employees, determines compensation and makes all employment decisions with respect to setting assignments and schedules, promotions, discipline and termination. See id. at 1345 ("Useful 'indicia of control' may be drawn from the agency context, including: 'the authority to hire, transfer, promote, discipline or discharge; the authority to establish work schedules or direct work assignments; [and] the obligation to pay or the duty to train the charging party.' " (quoting Oaks v. City of Fairhope, Ala., 515 F. Supp. 1004, 1035 (S.D. Ala. 1981) (internal quotation omitted)).

Third, it is uncontroverted that Omnicom and MarketStar do not share

management and that they have separate boards of directors and corporate officers.

Finally, although Omnicom is MarketStar's parent company, that relationship alone is insufficient to establish that they were an integrated enterprise for purposes of holding Omnicom liable as Plaintiff's "employer." See, e.g., Cruz-Lovo v. Ryder Sys., 298 F. Supp. 2d 1248, 1254 (S.D. Fla. 2003) ("[S]ome showing of common ownership . . . is not enough, when viewed in light of the other elements, to establish . . . integrated employers.").

### ii.   **Joint Employer Test**

This test is used to determine whether two or more entities can be found to be an "employer" for purposes of Title VII "where two companies contract with each other for the performance of a task, with one company retaining control over the other's employees." Kolczynski, 2005 U.S. Dist. LEXIS 20508, at *10 (citing Lyes, 166 F.3d at 1341; Virgo v. Riviera Beach Assocs., Ltd., 30 F.3d 1350, 1359-60 (11th Cir. 1994)).  As in Kolczynski, "[t]here is no indication that [Omnicom contracted with MarketStar] for any task, nor that [Omnicom] retained control over the employees of [MarketStar].  Therefore, the 'joint employer' test fails outright." Id.

### iii.   **Agency Test**

"In determining whether or not there is an employment relationship, the Eleventh Circuit instructs district courts to apply common-law principles of

agency." Kolczynski, 2005 U.S. Dist. LEXIS 20508, at *8 (citing Cuddeback v. Fla. Bd. of Educ., 381 F.3d 1230, 1234 (11th Cir. 2004)). "Specifically, it is 'the right of the employer to control the employee that [is] determinative.' " Id. (quoting Cobb v. Sun Papers, Inc., 673 F.2d 337, 341 (11th Cir. 1982)). "Other factors include 'the authority to hire, transfer, promote, discipline or discharge; the authority to establish work schedules or direct work assignments; [and] the obligation to pay or the duty to train the charging party.' " Id. at *8-9 (quoting Lyes, 166 F.3d at 1345).

As already discussed, there is no evidence that Omnicom had any right to control MarketStar's employees, or that it had the authority to make employment decisions with respect to those employees. Nor is there any evidence that Omnicom was involved in any decision to hire, place, transfer, discipline or terminate Plaintiff. The undersigned finds, therefore, that no employer-employee relationship existed between Omnicom and Plaintiff "in light of the common law principles of agency . . . ." Id. at *8 (internal quotations omitted).

For all these reasons, the undersigned finds that Plaintiff has failed to demonstrate that there is a triable issue of fact on whether Omnicom was Plaintiff's employer for purposes of her Title VII claims (Counts One, Three and Four) under any of the tests articulated *supra.*

### b. Cisco Defendants

As an initial matter, the Cisco defendants have shown, and Plaintiff has not

controverted, that there is no Cisco wholly-owned subsidiary or other Cisco-related entity operating in the United States under the name "Cisco Systems Sales and Services."[19] (See Doc. 60, Cisco Br., pp. 3, 13; see also Klekner Decl., Doc. 60-4, ¶ 6). Moreover, Plaintiff has not presented facts to show any involvement by such an entity, if it exists, in her employment.

With respect to Cisco Systems, Inc. and Cisco Systems Capital Corporation, Defendants contend that they were not Plaintiff's employer under the "joint employer" theory advanced by Plaintiff in her response to Defendants' motion to dismiss (see Doc. 34, pp. 3-9). (Doc. 60, Cisco Br., pp. 3-4, 14-20).

Joint employment is shown when a company "contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer." Virgo, 30 F.3d at 1360 (internal quotation omitted). The joint employment theory "recognizes that the business entities involved are in fact separate but that they share or co-determine those matters governing the essential terms and conditions of employment." Id.

The undersigned finds that Plaintiff has not created an issue of fact as to whether the Cisco defendants "retained for [themselves] sufficient control of the terms and conditions of" Plaintiff's employment such that the Cisco defendants

---

[19] Defendants use the names "Cisco Systems Sales and Services" and "Cisco Systems Sales & Services" interchangeably.

were joint employers with MarketStar for purposes of Title VII. It is uncontroverted that MarketStar: advertised the position for which Plaintiff was hired; interviewed and made the decision to hire Plaintiff; employed her at a MarketStar facility in Alpharetta, Georgia where no Cisco employees were employed; supervised her; made the decisions about which territory or territories to assign her; made the decision to transfer Plaintiff to another territory upon receiving complaints from Cisco personnel; determined her compensation and benefits; and made the decision to terminate her employment. The letter offering Plaintiff employment was from MarketStar (Ex. C to King Decl.); Plaintiff signed a Confidentiality and Non-Compete Agreement with MarketStar (Ex. D to King Decl.); she acknowledged that she received MarketStar's employee manual (Ex. E to King Decl.); and her termination letter was from MarketStar (Ex. J to King Decl.).

While Plaintiff also signed a Confidential Information Agreement with Cisco Systems, that agreement explicitly stated that Plaintiff was not a Cisco employee. (Ex. F to King Decl.). Furthermore, although Cisco employees complained to MarketStar management about Plaintiff and requested that she be transferred, Plaintiff has not controverted evidence that MarketStar managers decided to remove her from the territory where those complaints arose and to offer her a temporary Special Assignment position while they worked to find her another territory. (See Ex. I to King Decl.). Finally, Plaintiff has not controverted evidence that Cisco employees did not request that MarketStar terminate Plaintiff's

45

employment.  (See Cisco defs. SMF, ¶ 69).

Although Plaintiff performed services for Cisco as Cisco was MarketStar's client, Plaintiff has not controverted evidence that MarketStar, not Cisco, retained control of the terms and conditions of her employment, and therefore, Cisco was not a "joint employer" with MarketStar for purposes of Title VII.  Accordingly, the undersigned finds that Plaintiff has failed to show that there is a triable issue of fact on whether any of the Cisco defendants were Plaintiff's employer for purposes of her Title VII claims.

### 2.   § 1981 Claims

Because Plaintiff has not demonstrated the existence of a triable issue of fact with respect to whether Omnicom or any of the Cisco defendants were her employer for purposes of her Title VII claims, she has also failed to identify a jury issue with respect to whether they were her employer for purposes of her § 1981 claims (Counts Two, Three and Four).  See Hackett v. United Parcel Serv., Inc., No. CV 98-J-0030-S, 1999 U.S. Dist. LEXIS 21602, at *10-11 (N.D. Ala. Apr. 23, 1999) ("The test for whether a company is an 'employer' is the same under Title VII and § 1981." (citing Standard v. ABEL Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998))); see also Cooper v. Southern Co., 260 F. Supp. 2d 1295, 1298 (N.D. Ga. 2003) ("The analysis of whether a party is an employer appears to be the same under Title VII and § 1981."), aff'd, 390 F.3d 695 (11th Cir. 2004), cert denied, 546 U.S. 960 (2005), overruled in part on other grounds by Ash v. Tyson Foods, Inc.,

546 U.S. 454 (2006); <u>Dunn v. Uniroyal Chem. Co.</u>, 192 F. Supp. 2d 557, 561

(M.D. La. 2001) (finding plaintiff could not pursue § 1981 claim against defendant

who was not her "employer" under Title VII).

### 3. **Negligent Hiring and Retention (Count Seven) and Negligent Training and Supervision (Count Eight)**

Plaintiff's negligent hiring, retention, training and supervision claims rely

on a showing that these defendants were her employer and that they hired,

retained, trained and supervised the persons who allegedly discriminated or

retaliated against her. However, as already discussed, Plaintiff has failed to

demonstrate that there is a jury issue on whether Omnicom or any of the Cisco

defendants were her employer or had sufficient control over the terms and

conditions of her employment to be considered her employer. Therefore, the

undersigned finds that Plaintiff also has not shown that there is a jury question

on whether any of these defendants were her employer for purposes of her state

law employment-related claims.

Because Plaintiff has failed to demonstrate that there is a triable issue of

fact as to whether Omnicom or any of the Cisco defendants were Plaintiff's

employer for purposes of her Title VII claims (Counts One, Three and Four), her

§ 1981 claims (Counts Two, Three and Four), her negligent hiring and retention

claims (Count Seven) and her negligent training and supervision claims (Count

Eight), it is **RECOMMENDED** that the motions for summary judgment filed by

Omnicom [Doc. 58] and the Cisco defendants [Doc. 60] be **GRANTED** on those

claims.

## V. <u>Summary</u>

It is **RECOMMENDED** that Defendants' motion to dismiss [Doc. 20] be **GRANTED** on Counts Five, Six, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, Seventeen and Eighteen, and that those claims be **DISMISSED** as to all Defendants. It is further **RECOMMENDED** that Defendant MarketStar Corporation's motion to dismiss [Doc. 20] be **DENIED** on Counts Three, Seven and Eight.

It is further **RECOMMENDED** that the motions for summary judgment filed by Defendant Omnicom Group Inc. [Doc. 58] and by Defendants Cisco Systems, Inc., Cisco Systems Sales & Services and Cisco Systems Capital Corporation [Doc. 60] be **GRANTED** on Counts One, Two, Three, Four, Seven and Eight, and that those counts be **DISMISSED** as to Defendants Omnicom Group Inc., Cisco Systems, Inc., Cisco Systems Sales & Services, and Cisco Systems Capital Corporation.

If the District Court adopts this Report and Recommendation, no claims will remain against Defendants Omnicom Group Inc., Cisco Systems, Inc., Cisco Systems Sales & Services, and Cisco Systems Capital Corporation, and the only claims remaining in the case will be the following claims against Defendant

MarketStar Corporation: Counts One, Two, Three, Four, Seven and Eight.[20]

**IT IS SO REPORTED AND RECOMMENDED** this 30th day of January, 2009.

*Susan S. Cole*

SUSAN S. COLE
United States Magistrate Judge

---

[20] Following the District Court's ruling on Defendants' motions, this case will no longer be stayed (see Doc. 49), and the undersigned will issue a scheduling order for conducting discovery, the filing of dispositive motions or the filing of a pretrial order if no dispositive motions are filed at the end of discovery.